UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SAMIA N. GARNER**,                                      Case Number 1:14 CV 564

    Plaintiff,                                              Judge James G. Carr

    v.                                                      REPORT AND RECOMMENDATION

**COMMISSIONER OF SOCIAL SECURITY**,

    Defendant.                                              Magistrate Judge James R. Knepp II

### INTRODUCTION

Plaintiff Samia Garner filed a Complaint against Defendant Commissioner of Social Security's decision to deny supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. § 1385(c). This matter has been referred to the undersigned for a Report and Recommendation pursuant to Local Rule 72.2(b)(1). (Non-document entry dated March 14, 2014). For the reasons stated below, the undersigned recommends the Commissioner's decision be remanded for further proceedings.

### PROCEDURAL BACKGROUND

On February 10, 2011, Plaintiff filed for SSI benefits alleging disability since September 23, 2010. (Tr. 151). Plaintiff's claims were denied initially (Tr. 78-80) and on reconsideration (Tr. 81-83). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 88-90). On October 4, 2012, Plaintiff (with counsel) and a vocational expert ("VE") testified at a hearing after which the ALJ found Plaintiff not disabled. (Tr. 11-26; 27-53). On January 9, 2014, the Appeals Council denied Plaintiff's request for review, making the hearing decision the final

decision of the Commissioner. (Tr. 1-5); 20 C.F.R. §§ 416.1455, 416.1481. On March 14, 2014, Plaintiff filed the instant case. (Doc. 1).

## FACTUAL BACKGROUND

### *Personal and Vocational Background*

Born December 29, 1992, Plaintiff was 19 years old at the time of the hearing. (Tr. 130). She lived alone in a one-bedroom apartment and her mother had to drive her to the hearing because she did not have a drivers' license. (Tr. 34-35). Plaintiff quit school in the tenth grade because she found it too overwhelming. (Tr. 35). She had past work experience on an assembly line but had been fired after less than a month because she could not work fast enough. (Tr. 36-37). Prior to her factory work, Plaintiff worked part-time in retail, child care, and landscaping/gardening. (Tr. 37-38).

### *Medical Evidence*

On July 7, 2010, Plaintiff's mother brought her to an assessment with Olivia Leverich, Psy.D., at Harbor Behavioral Healthcare because she had mood and behavior difficulties. (Tr. 296-300). Dr. Leverich noted a family history of mental illness and a history of emotional and sexual abuse. (Tr. 297). On examination, Plaintiff had guarded behavior, appropriate mood and thought content with logical thought processes, normal speech and psychomotor activity, average intellect, normal judgment and memory, and partially present insight. (Tr. 298-99). Plaintiff reported exhibiting a mixture of depressed and manic symptoms and Dr. Leverich diagnosed mood disorder not otherwise specified, pending further assessment to clarify her mood disorder. (Tr. 299). Plaintiff reported engaging in disruptive behavior and Dr. Leverich also diagnosed oppositional defiant disorder ("ODD") with further evaluation needed to rule out conduct

2

disorder. (Tr. 299). Dr. Leverich assigned a global assessment of functioning ("GAF") score of 55.[1]

Plaintiff underwent a psychiatric evaluation with Coleen Shaw, N.P., on August 23, 2010. (Tr. 305-08). On mental status examination, Plaintiff was alert and cooperative with a clean appearance, no abnormal movements, a normal rate and pattern of speech, congruent but constricted affect, depressed mood, impaired memory, and impaired attention and concentration. (Tr. 306). Her thought content was normal but her judgment and insight were poor. (Tr. 307). Ms. Shaw prescribed Focalin XR, Risperdal, and Prozac and assigned a GAF score of 55.[2] (Tr. 308).

On September 12, 2010, Plaintiff was admitted to Toledo Children's Hospital following a fight with her grandmother that almost became physical. (Tr. 345). She was examined by Olatunde Fatinikun, M.D., on September 13, 2010. (Tr. 381). Dr. Fatinikun documented that Plaintiff was obese, had poor eye contact, normal speech, and was superficially cooperative although her mood was depressed and her affect was defiant. (Tr. 380). Plaintiff had poor insight, judgment, and impulse control but denied any suicidal or homicidal ideation. (Tr. 380). Dr. Fatinikun diagnosed major depressive disorder, recurrent, without psychotic features, attention deficit/hyperactivity disorder combined type ("ADHD"), and ODD. (Tr. 380). Dr. Fatinikun recommended hospitalization for three to five days for safety, prescribed an increase in

---

1. The GAF scale represents a "clinician's judgment" of an individual's symptom severity or level of functioning. American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders*, 32-33 (4th ed., Text Rev. 2000) (*DSM-IV-TR*). A GAF score of 51-60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers and co-workers). *Id.*, at 34.
2. *See DSM-IV-TR*, *supra*, note 1.

3

Focalin XR, and assigned a GAF of 20-25.[3] (Tr. 380-81).

From October 4, 2010 through August 5, 2011, Plaintiff saw Coleen Shaw, N.P., on numerous occasions for medication management. (Tr. 311-321, 428-31, 438-40). During these visits, Plaintiff expressed grandiose thoughts, reported struggling to focus on schoolwork, being talkative and moody, having depression, and having episodes of anger. (Tr. 313, 317, 319, 428, 438). During Plaintiff's mental status exams, she was guarded, endorsed impulsivity, and had poor insight and judgment. (Tr. 314, 320, 429, 439). Her attention and concentration were intact at some appointments and impaired at others. (Tr. 314, 320, 429, 439). Her diagnosis and GAF score remained the same. (Tr. 314-15, 317, 320, 429-30).

On January 20, 2011, Plaintiff returned to Dr. Leverich reporting similar symptoms to those she reported to Ms. Shaw. (Tr. 301). Plaintiff's mental status exam revealed a flat mood, tangential thought process, and only partially present insight. (Tr. 303). Dr. Leverich diagnosed bipolar disorder not otherwise specified and ADHD, recommended continued individual therapy, medication management, and that Plaintiff receive case management and vocational services to progress and live independently. (Tr. 303). Dr. Leverich assigned a GAF score of 61.[4]

When Plaintiff saw Ms. Shaw on May 25, 2011, she was visibly depressed and said she would shoot herself if she had a gun. (Tr. 421). The next day, Plaintiff was seen in the ER because she felt suicidal. (Tr. 323-24). An ER physician's assistant requested an emergency

---

3. *See DSM-IV-TR*, *supra*, note 1. A GAF score of 21-30 reflects behavior that is considerably influenced by delusions or hallucinations OR serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation OR inability to function in almost all areas (e.g., states in bed all day; no job, home, or friends). A GAF between 11-20 reflects some danger of hurting self or others (e.g., suicide attempts without clear expectation of death; frequently violent; manic excitement) OR occasionally fails to maintain minimal personal hygiene (e.g., smears feces) OR gross impairment in communication (e.g., largely incoherent or mute). *Id.* at 34.
4. *See DSM-IV-TR*, *supra*, note 1. A GAF score of 61-70 reflects some mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., temporarily falling behind in coursework). *Id.* at 34.

4

admission for Plaintiff to Rescue, Inc. on the basis that she posed a substantial risk of physically harming herself. (Tr. 333-34).

In the summer of 2011, Plaintiff participated in a summer job program through Harbor Career connections. (Tr. 267-75). During this program, Plaintiff was assigned to work various jobs and her progress was evaluated at each one. (Tr. 276-85). Throughout the summer, Plaintiff was assigned to work as a merchandise associate for TJ Maxx and as a childcare provider for Kids 2 Treasurer. (Tr. 276-85). Plaintiff's evaluations varied throughout the summer with her some weeks requiring coaching in all areas and other weeks she struggled in only one or two areas. (Tr. 282). For example, one week Plaintiff had satisfactory attention to duties, relations with her supervisor, grooming, speed, quality, and even showed initiative; however she struggled with attendance and following safety procedures. (Tr. 282-83). On another week, Plaintiff struggled in every area except following safety procedures. (Tr. 278-79). Following the program, in October 2011, a vocational specialist was concerned that Plaintiff was not employable at this time. (Tr. 464).

Plaintiff continued to see therapists and seek treatment into 2012. (Tr. 477, 484, 492). Plaintiff continued to make some improvement towards her goals at each visit. (Tr. 477, 492).

*School Documentation*

On January 6, 2010, Plaintiff was evaluated by school psychologist Susan Rodgers because the school suspected she qualified as emotionally disturbed. (Tr. 219). Ms. Rodgers documented that Plaintiff had developed poor work habits in school that would hinder her ability to find employment and that her irregular school attendance alone would be a major deterrent to possible employment. (Tr. 217). To improve, Plaintiff needed to attend school regularly, comply with teacher directives, and when given an assignment, begin it in class to insure she understood

5

the material. (Tr. 217). Further, Plaintiff needed to finish her homework on time and get assignments when she was absent. (Tr. 217).

Ms. Rodgers opined it may take Plaintiff longer to learn new information and complete assignments when compared with other children her age and she may become fatigued when trying to learn new information or complete assignments. (Tr. 217). Frequent breaks would likely help her avoid becoming fatigued. (Tr. 217). Additionally, Plaintiff had weakness in the area of short-term memory, learning ability, visual perception, visual-motor coordination, visual scanning ability, cognitive flexibility, attention, and motivation. (Tr. 217).

*Opinion Evidence*

On April 19, 2011, state agency reviewing psychological consultant, Frank Orosz, Ph.D. reviewed Plaintiff's medical records. (Tr. 57). Dr. Orosz opined that Plaintiff was moderately limited in her ability to work in close proximity to others without being distracting, interact appropriately with the general public, accept instruction and respond appropriately to criticism from supervisors, and get along with coworkers or peers. (Tr. 58-60). Dr. Orosz indicated that Plaintiff's memory and concentration were impaired. (Tr. 58) However, Plaintiff was not significantly limited in her ability to carry out instructions or maintain concentration. (Tr. 58). She would need a significant amount of rest periods and hence would be limited to simple and more detailed tasks that do not have strict production requirements. (Tr. 58-59). On August 18, 2011, state agency reviewing psychologist Bruce Goldsmith, Ph.D., reviewed the record and largely concurred with Dr. Orosz's opinion but additionally stated that Plaintiff was limited to work with only occasional, superficial contact with others in an environment with infrequent changes. (Tr. 67-70).

6

Ms. Shaw completed a Mental Functional Capacity Assessment for Plaintiff on April 22, 2011. (Tr. 494). Ms. Shaw opined that Plaintiff was not significantly limited in her ability to understand and remember very short and simple instructions or her ability to carry out very short and simple instructions. (Tr. 494). Plaintiff was moderately limited in her ability to maintain attention and concentration for extended periods, perform activities as scheduled and maintain attendance and punctuality, make simple work-related decisions, complete a normal workday without interruptions for psychological symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. 494). Ms. Shaw indicated Plaintiff was not significantly limited in her ability to interact with the general public, ask simple questions or request assistance, maintain socially appropriate behavior, and adhere to basic standards of neatness and cleanliness. (Tr. 494).

*ALJ Decision*

On October 30, 2012, the ALJ found Plaintiff had the severe impairments of bipolar disorder, major depressive disorder, ODD, ADHD, and borderline intellectual functioning. (Tr. 16). The ALJ found Plaintiff's impairments considered singly or in combination did not meet or equal a listing. (Tr. 17). Next, the ALJ found Plaintiff had the RFC to perform a full range of work with the following non-exertional limitations: work should be limited to special vocational preparation ("SVP")[5] of 1 or 2 and limited to only occasional interaction with the public, co-workers, or supervisors. (Tr. 18-19). Further, the work output should not be based on strict production standards involving numeric quotas or other time/quantity metrics. (Tr. 19).

---

5. Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. An SVP of 1 requires a short demonstration only and an SVP of 2 requires anything beyond a short demonstration up to and including one month of preparation. *Dictionary of Occupational Titles*, Appendix C: Components of the Definition Trailer (June 3, 2005) available at http://www.occupationalinfo.org/appendxc_1.html.

Next, the ALJ found, based on the VE testimony, that Plaintiff could perform work as an industrial cleaner, stores laborer, and floor waxer. (Tr. 22).  Therefore, she is not disabled. (Tr. 22).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for DIB and SSI is predicated on the existence of a disability. 42 U.S.C. §§ 423(a); 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The

Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

## DISCUSSION

Plaintiff argues (1) the ALJ erred in failing to consider all the evidence of record including the job coach's report and the school psychologist's report in evaluating the opinion of Ms. Shaw and (2) the ALJ's RFC assessment was not supported by substantial evidence because one state agency opinion was outdated and another state agency psychologist found greater limitations than the ALJ. (Doc. 14, at 1).

*Non-Examining Psychologists' Opinions*

First, Plaintiff argues the ALJ erred in assigning "great weight" to the non-examining psychologist's opinion because it was made in August 2011 before a significant amount of medical evidence was added. (Doc. 14, at 14-15). Second, Plaintiff argues the ALJ erred in adopting findings from the state agency psychologist under the listing criteria instead of the RFC criteria and third, that the ALJ erred in excluding a portion of the state agency psychologist's findings from his RFC assessment. (Doc. 14, at 14-15). However, first the Court must address

9

the fact that the ALJ's assessment of the state agency psychologist only addresses the opinion of one state agency psychologist and fails to give consideration to the other.

"Under the regulations, ALJs 'must consider findings of [s]tate agency medical and psychological consultants,' but ALJs 'are not bound by any findings made by [s]tate agency medical or psychological consultants.'" *Renfro v. Barnhart*, 30 F. App'x 431, 436 (6th Cir. 2002) (quoting 20 C.F.R. § 404 .1527(f)(2)(i)). However, "the opinions of non-examining state agency medical consultants have some value and can, under some circumstances, be given significant weight." *Douglas v. Comm'r of Soc. Sec.*, 832 F.Supp. 2d 813, 823-24 (S.D. Ohio 2011). This occurs because the Commissioner views such medical sources "as highly qualified physicians and psychologists who are experts in the evaluation of the medical issues in disability claims under the [Social Security] Act." *Id.*; § 416.927(d),(f); SSR 96–6p at *2–3. "Consequently, opinions of one-time examining physicians and record-reviewing physicians are weighed under the same factors as treating physicians including supportability, consistency, and specialization." *Douglas*, 832 F.Supp. 2d at 823-24.

<u>Dr. Goldsmith</u>

Here, the ALJ's decision references only one state agency consultant opinion when there were two state agency consultants who reviewed Plaintiff's record. The first was Dr. Orosz at the initial level and the second was Dr. Goldsmith at the reconsideration level. (Tr. 58-60; 67-70). To a large extent, Dr. Goldsmith's opinion concurs with Dr. Orosz's. (Tr. 58-60; 67-70). However, Dr. Goldsmith did not expressly affirm Dr. Orosz's opinion and limited Plaintiff to work with only superficial contact with others in an environment with infrequent changes, which Dr. Orosz had not done. The ALJ included all of the limitations in Dr. Orosz's opinion and omitted the additional limitations that were only contained in Dr. Goldsmith's opinion. (Tr.

21).Therefore, the Court can only conclude that the ALJ only addressed Dr. Orosz's opinion in making his decision.

The regulations are clear, the ALJ must explain the weight given to a state agency medical or psychological consultant's opinion. 20 C.F.R. § 416.927(e)(2)(ii). Here, the ALJ failed to address Dr. Goldsmith's opinion in his decision. Therefore, remand is required in order for the ALJ to address and explain the weight assigned to Dr. Goldsmith's opinion.

Dr. Orosz

However, Plaintiff's argument that the ALJ should not have relied on Dr. Orosz's opinion because it was made before additional treatment records were added to the record is without merit. In circumstances where the ALJ credits an opinion based on an incomplete case record, the Sixth Circuit requires some indication that the ALJ at least considered the effect of subsequent medical records in determining the reliability of the state agency assessments. *Blakley*, 581 F.3d 399, 409 (6th Cir. 2009).

The ALJ's decision clearly reflects his consideration of Plaintiff's treatment records dated after the state agency psychologists rendered their opinions. (Tr. 20). The ALJ's decision describes a treatment record from September 2011, in which Plaintiff reported feeling better and having improved focus while on her medications. (Tr. 20). Also, the ALJ observed in March 2012, Plaintiff's therapist described Plaintiff as more engaged and positive about the therapy process (Tr. 20). Despite her claim in May 2012 that she had stopped taking her medications because they did nothing for her, the ALJ's decision cites records, including her testimony from October 2012, in which she claimed to be feeling better and less sleepy while medicated with Seroquel (Tr. 20). Based on these records, the ALJ concluded Plaintiff did well on her medications, but may require continual medication adjustments. (Tr. 20). Since the ALJ's

decision expressly addressed Plaintiff's treatment records, Plaintiff's claim concerning the ALJ's reliance on the dated findings rendered by the state agency psychologists is without merit.

Further, Plaintiff argues the ALJ erred in citing to Dr. Orosz's evaluation of "B" Criteria with in his RFC assessment. (Doc. 14, at 14-15). The Court notes that this is contrary to SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) which provides that "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." However, because remand is already required to address Dr. Goldsmith's opinion, the Court makes no determination as to whether this, by itself constitutes error or may otherwise have been excused as harmless.

### *School Psychologist and Job Coach Opinions*

Plaintiff argues the ALJ erred in his assessment of Ms. Shaw's opinion because he ignored evidence from Plaintiff's school psychologist and summer job coach. (Doc. 14, 12-13). Plaintiff does not dispute that the school psychologist and summer job coach were not "acceptable medical sources"[6] and therefore did not provide medical opinions. However, they are classified as "other sources" under the regulations. 20 C.F.R. § 416.913(d).

The regulations provide specific criteria for evaluating medical opinions from "acceptable medical sources"; however, they do not explicitly address how to consider opinions and evidence from "other sources", including "non-medical sources" listed in §§ 404.1513(d) and 416.913(d). SSR 06-3p clarifies opinions from other sources "are important and should be evaluated on key issues such as impairment severity and functional effects." 2006 WL 2329939,

---

6. Although licensed psychologists' opinions are considered medical opinions, a school psychologist's opinion is only a medical opinion under the regulations for the purposes of establishing intellectual disability, learning disabilities, and borderline intellectual functioning. 20 C.F.R. § 416.913(a)(2).

at *3 (Aug. 9, 2006). SSR 06-3p also states other sources should be evaluated under the factors applicable to opinions from "acceptable medical sources" – i.e., how long the source has known and how frequently the source has seen the individual; consistency with the record evidence; specialty or area of expertise; how well the source explains the opinion; supportability; and any other factors that tend to support or refute the opinion. SSR 06-3p; 20 C.F.R. § 404.1527(d)(2).

In the Sixth Circuit, "an ALJ has discretion to determine the proper weight to accord opinions from 'other sources'". *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). While the ALJ "does not have a heightened duty of articulation when addressing opinions issued by 'other sources', the ALJ must nevertheless "consider" those opinions. *Hatley v. Comm'r of Soc. Sec.*, 2014 WL 3670078 (N.D. Ohio); *see also Brewer v. Astrue*, 2012 WL 262632, at *10 (N.D. Ohio 2012) ("SSR 06-3p does not include an express requirement for a certain level of analysis that must be included in the decision of the ALJ regarding the weight or credibility of opinion evidence from 'other sources.'").

Here, there is little evidence the ALJ considered Ms. Rodger's opinion as there is no mention of it in the decision. Although, as explained above, there is no specific articulation requirement with respect to non-medical opinions, when a large piece of evidence is not mentioned in the record, this provides a strong indication it was not considered. While the ALJ does briefly reference Plaintiff's job coach's opinion that she "had an attitude with employers" there is otherwise no evidence the ALJ considered the in-depth analysis of Plaintiff's ability to work provided during her summer job workshop. (Tr. 18). With an assessment of this key piece of evidence missing, it is impossible for the Court to determine whether the ALJ's decision is supported by substantial evidence. Therefore, remand is necessary for the ALJ to at least provide some discussion of Plaintiff's school records and her attempts at a summer job program.

*Ms. Shaw's Opinion*

Neither party disputes that Ms. Shaw, as a nurse practitioner is not an acceptable medical source under the regulations but rather is classified as an "other source" under the regulations. (Doc. 14, at 11); (Doc. 17, at 6).

The ALJ evaluated Ms. Shaw's opinion as follows:

> Ms. Shaw opined that the claimant had moderate limitations in maintaining attention and concentration for an extended period, performing within a schedule, regular and punctual attendance, and the ability to work with others with no distractions (Ex. 8F/1). She also concluded that the claimant had moderate limitations in the ability to complete a normal workday without an unreasonable number and length of rest periods (8F/1). Since Ms. Shaw's opinion takes into account the claimant's moderate difficulties in concentration, persistence, or pace as evidenced by her inability to comply with production requirements, this opinion is given substantial weight. However, little weight is given to her assessment of the claimant's ability to complete a normal workday without an unreasonable number and length of rest periods because, although the claimant has problems working to production requirements, there are no indications that her mental limitations would necessitate more breaks than provided in a standard work day.

(Tr. 20-21).

Here, despite Ms. Shaw's opinion being an "other source" opinion, the ALJ chose to give the majority of it substantial weight. However, the ALJ found Ms. Shaw's opinion that Plaintiff could not complete a normal workday without substantial breaks was not supported by the record as there were no indications this was necessary. (Tr. 20-21). In so stating, it is clear the ALJ properly considered Ms. Shaw's opinion and disregarded a portion of it based on one of the seven factors in 20 C.F.R. § 404.1527(d)(2), namely the opinion is not supported by the record.

However, Plaintiff argues the ALJ erred in evaluating Ms. Shaw's opinion because he did not consider the opinions of her job coach and school psychologist, which was in error, as discussed above. (Doc. 14, at 12-13). As such, the Court is unable to make a determination as to

14

the sufficiency of the ALJ's analysis of Ms. Shaw's opinion until the job coach and school psychologist records have been addressed.

## CONCLUSION

For the foregoing reasons, the undersigned recommends the Court find the ALJ failed to (1) properly consider and evaluate the opinion of Dr. Goldsmith and (2) properly consider and address the opinions of school psychologist, Ms. Rodgers, and job coach; Ms. Schoen. Accordingly, the Court should remand under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

IT IS SO ORDERED.

s/James R. Knepp, II
United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).